## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

KATHLEEN BILES, individually and on
behalf of all others similarly situated,

              Plaintiff,

v.

DEVA CONCEPTS, LLC, d/b/a DevaCurl

             Defendant.

**CASE NO. 1:20-cv-3537**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff brings this Class Action Complaint against Defendant Deva Concepts, LLC, ("Defendant"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys:

## INTRODUCTION

1.      This is a civil class action brought by Plaintiff on behalf of consumers who purchased Defendant's DevaCurl hair products,[1] which are used for personal cosmetic purposes.

---

[1] DevaCurl's line of cleansing, conditioning, treatment, and styling products include including "No-Poo Original" Zero-Lathering Conditioning Cleanser (the "No-Poo Product"); "Low-Poo Original" Mild Lather Cleanser; "Low-Poo Delight" Weightless Waves Mild Lather Cleanser; "No-Poo Decadence" Zero Lather Ultra Moisturizing Milk Cleanser; "One Condition Original" Daily Cream Conditioner; "One Condition Delight" Weightless Waves Conditioner; "One Condition Decadence" Ultra Moisturizing Milk Conditioner; "Leave-In Decadence" Ultra Moisturizing Leave-In Conditioner; "Heaven in Hair" Divine Deep Conditioner; "Buildup Buster" Micellar Water Cleansing Serum; "Melt Into Moisture" Matcha Butter Conditioning Mask; "Deep Sea Repair" Seaweed Strengthening Mask; "Wash Day Wonder" Pre-Cleanse Slip Detangler; "Styling Cream" Touchable Curl Definer; "SuperCream" Coconut Curl Styler; "DevaFresh" Scalp & Curl Revitalizer; "High Shine" Multi-Benefit Oil; "B'Leave-In" Miracle Curl Plumper; "Light Defining Gel" Soft Hold No-Crunch Styler; "Ultra Defining Gel" Strong Hold No-Crunch Styler; "Frizz-Free Volumizing Foam" Lightweight Body Booster; "Wave Maker" Touchable Texture Whip; "Arc AnGEL" Maximum Hold No Crunch Styler; "Beautiful Mess" Curl Sculpting Pomade; "Mist-er Right" Dream Curl Refresher; "The Curl Maker" Curl Boosting Spray Gel; "Flexible Hold Hairspray" Touchable Finishing Styler; "Super Stretch" Coconut Curl Elongator; "Set It Free" Moisture Lock Finishing Spray; and "No Comb Detangling Spray" Lightweight Curl Tamer (collectively "the Products"). A

Plaintiff seeks damages and equitable remedies for herself, and for the Class and Subclasses (defined below).

2.      In 2002, Defendant rose to prominence when it created and developed the formula for the DevaCurl No-Poo Original, i.e., the No-Poo Product, which is marketed as an "innovative new haircare category" and a "game-changing alternative to traditional shampoo."[2]

3.      Defendant further markets the No-Poo Product as a "first-of-its-kind, no-suds conditioning cleanser" that is "free of sulfates, parabens, and silicones" and that is used "to gently cleanse curls without stripping the natural oils they need to look healthy, bouncy and simply gorgeous."[3]

4.      Consumers purchase Defendant's No-Poo Product and other DevaCurl Products because they do not contain sulfates, which "are associated with harshness,"[4] and because of Defendant's marketing, which claims that the No-Poo Product and other DevaCurl Products "allow[] your scalp to regulate, and your hair to become more what nature intended."[5]

5.      Consumers also seek out the No-Poo Product and other DevaCurl Products because they purport to provide maximum frizz prevention and slows color fading.[6]

6.      Defendant and certain publications have suggested that those with curly hair should not use traditional shampoo because it dries out people's curls when their hair is being washed.[7] The No-Poo Product was touted as the answer to this age-old issue. It does not lather

---

complete listing of products can be found at https://www.devacurl.com/us/products.

[2] https://www.devacurl.com/us/curl-101/our-story.

[3] *Id.*

[4] Catherine Saint Louis, *Sulfate-Free Products Have Some in a Lather*, N.Y. TIMES, Sept. 29, 2010, *available at* https://www.nytimes.com/2010/09/30/fashion/30Skin.html (last visited Mar. 9, 2020).

[5] *Id.*

[6] https://www.amazon.com/gp/product/B0030LF1KA?pf_rd_p=ab873d20-a0ca-439b-ac45-cd78f07a84d8&pf_rd_r=7JK77ENMJZXVFMJHKQWJ (last visited Mar. 9, 2020).

[7] Lauren Schwartzberg, *I Only Allow One Brand of Products Near My Tight Curls*, NEW YORK MAGAZINE, Aug. 31, 2017, *available at* https://nymag.com/strategist/article/best-curly-hair-products-review-devachan-no-poo-

and does not contain the sulfates found in shampoos that dry out curls.[8] Defendant has marketed its No-Poo Product as a shampoo that still moisturizes.[9]

7.    Many have used the No-Poo Product as a complete shampoo replacement once or twice a week to cleanse hair rather than using traditional shampoo.[10] Therefore, consumers have purchased the No-Poo Product as a complete alternative to traditional shampoo.

8.    Since the creation of the No-Poo Product, Defendant has formulated, manufactured, marketed, and sold many accompanying Products for the same purposes to consumers in this District and across the country.[11]

9.    Consumers pay a premium over the cost of traditional retail and salon shampoos for Defendant's Products, based upon the representations above. But despite Defendant's assurances of the Products' benefits, use of the Products has caused scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding during normal use by thousands of consumers.

10.    Defendant provides no warning about these consequences, and in fact makes numerous assertions about the gentle and beneficial nature of the Products.

11.    For example, Defendant's website makes statements relating to its No-Poo Product such as "[t]raditional shampoo can be too harsh for curls. That's why we made No-Poo Original! The non-lathering formula with peppermint and grapeseed oil gently cleanses without stripping the natural oils your curls need."[12] A "Senior Stylist" tip on Defendant's website also

---

conditioner.html (last visited Mar. 9, 2020).
[8] *Id.*
[9] *Id.*
[10] Tanisha Pina, *12 Women on the Products That Transformed Their Curls*, GLAMOUR, Aug. 16, 2019, *available at* https://www.glamour.com/gallery/best-curly-hair-products (last visited Mar. 9, 2020).
[11] *See* note 1, *supra*.
[12] https://www.devacurl.com/us/products/cleansers/no-poo-original/v/29767841742930.

instructs consumers, "Make sure you apply No-Poo Original *directly to your scalp, add more water, and really scrub it in*."[13]

12.    Regarding its "One Condition Original" Daily Cream Conditioner, Defendant's website states, "When it comes to curls, it's all about condition, condition, condition. So apply, rinse and repeat as often as needed!"[14]

13.    These statements and others were and are false, deceptive, and misleading and have harmed Plaintiff and the Class.

14.    Defendant is aware of the issues with its Products but conceals and fails to disclose that the Products cause hair loss and shedding, by intentionally blaming other risk factors such as giving birth, stress, scalp buildup, dandruff, losing weight, certain illnesses, and more.[15]

15.    Defendant conceals and fails to disclose the defective nature of its Products by actively misleading consumers into believing that the hair loss and shedding caused by the Products is "normal" and "common," that even excessive shedding of over 100 strands of hair per day is "common," and that shedding is not preventable.[16]

16.    Defendant has knowledge of the hair loss and scalp irritation caused by the Products. For example, Defendant has received multiple FDA complaints of hair loss and scalp irritation beginning in February 2018. There have been hundreds of complaints posted on social media sites like Facebook. Social media influencers have tried to spread the word about the hair loss and scalp irritation caused by Defendant's Products. Major media outlets including the ABC television affiliate in New York City have broken the story.[17]

---

[13] *Id.* (emphasis added).
[14] https://www.devacurl.com/us/products/conditioners/one-condition-original/v/29778541346898.
[15] https://www.devacurl.com/blog/hair-shedding-101/.
[16] *Id.*
[17] Darla Miles, *Customers say DevaCurl product line made their hair fall out*, ABC7 NEWS, Feb. 6, 2020, *available*

17.    Defendant has explicitly acknowledged the reports of hair loss and scalp irritation associated with its products, going so far as to post an explanatory statement on its website, prominently featured with a link entitled "a message for our devas" in the top right corner of the website's homepage.[18]

18.    Defendant has even created a "Curl Council" to deal with the consumer backlash as a result of the issues alleged herein."[19] However, the purpose of this "Curl Council" is unclear, and its first meeting was not scheduled to take place until March 2020.[20]

19.    The homepage for Defendant's website, www.devacurl.com, now contains a link to a separate website, www.factsaboutdevacurl.com, while claiming, "We're here to provide answers and information so you can feel as confident as we are in our products."

20.    Despite notice and knowledge of the problems caused by the Products, Defendant has not recalled the Products and does not plan to, has not provided any warnings of the known risks, has denied that the Products cause the reported health issues, and has not offered its customers any compensation for their damages.

21.    Had Plaintiff and other Class members known that Defendant's Products would cause hair loss, scalp irritation and other problems, they would not have purchased the Products.

22.    Plaintiff and each of the Class Members have been damaged and suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices as set forth herein by Defendant and seek compensatory damages and injunctive relief.

---

*at* https://abc7ny.com/health/customers-say-curly-styling-products-made-their-hair-fall-%20out/5906690/ (last visited Mar. 9, 2020).
[18] https://www.devacurl.com/us/deva-community-statement.
[19] Thatiana Diaz, *DevaCurl Creates "Curl Care Council" Following Hair-Loss Allegations*, REFINERY 29, Feb. 11, 2020, *available at* https://www.refinery29.com/en-us/2020/02/9363703/devacurl-hair-loss-damage-controversy (last visited Mar. 9, 2020).
[20] https://www.factsaboutdevacurl.com/us/our-commitment.

23.    Given the massive quantities of the Products sold all over the country, this class action is the proper vehicle for addressing Defendant's misconduct and for attaining needed relief for those affected.

**PARTIES**

24.    Plaintiff Kathleen Biles is a resident of Malvern, Pennsylvania who has purchased and used the No-Poo Product, One Condition Original, and Leave-In Decadence within the relevant time period. Plaintiff Biles experienced numerous symptoms after using DevaCurl Products, including excessive dandruff, intense itching, and severe hair thinning to the point where her scalp is clearly visible. Plaintiff saw both her family physician and a dermatologist about the problem. She recently stopped using the Products after learning about the associated problems.

25.    Defendant Deva Concepts LLC is incorporated in Delaware with its principal place of business at 560 Broadway Suite 206 New York, NY 10012.

**JURISDICTION AND VENUE**

26.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from Defendant.

27.    This Court has personal jurisdiction over Defendant because it transacts business in the United States, including in this District, has substantial aggregate contacts with the United States, including in this District, engaged in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed itself of the laws of the United States.

28.    In accordance with 28 U.S.C. § 1391, venue is proper in this District because a

substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, Defendant transacts business in this District, and Defendant's principal place of business is located in this District.

## FACTUAL ALLEGATIONS

### I.    The DevaCurl Products

29.    At all relevant times, Defendant has marketed the No-Poo Product through national marketing and advertising campaigns as being "free of harsh ingredients," a complete replacement for traditional shampoo that creates healthy curly hair without color fading, and as a "game-changing alternative to traditional shampoo."[21]

30.    On Defendant's website, it gives a three-step process for using the No-Poo Product and the DevaCurl One Condition® Original conditioner. Step one is "Wet curls and apply a generous amount to your scalp, scrubbing it in. Remember it won't lather, but it's still working!"[22]

31.    For step two it states "Rinse thoroughly by scrubbing your scalp and letting the water move No-Poo Original through your ends."[23]

32.    Step three states, "Follow with One Condition® Original for additional moisture."[24]

33.    However, despite using Defendant's three step process, the No-Poo Product causes users to sustain scalp irritation, hair loss, and/or balding during normal use. Users have hair fall out in varying degrees during and immediately after use. The hair loss, scalp irritation and balding suffered by Plaintiff and Class Members is embarrassing and can be extreme in certain instances.

---

[21] https://www.devacurl.com/us/curl-101/product-philosophy.
[22] https://www.devacurl.com/us/products/cleansers/no-poo-original/v/29767841742930.
[23] *Id.*
[24] *Id.*

34.    Many consumers, including Plaintiff, have experienced hair loss, "shedding" and/or "thinning" after using the No-Poo Product and other DevaCurl products. Some users have had hair fall out in "clumps" and have suffered extreme distress as a result.

35.    Consumers of the Products pay a premium for them far and above what normal hair care products cost. For example, Defendant's No-Poo Product sells for $46.00 as compared to similar retail products sold at Target for as little as $3.99,[25] a difference of more than $42.

36.    Consumers pay a premium for Defendant's Products because of the benefits Defendant claims they provide above and beyond normal hair care products. For example, in respect to Defendant's No-Poo Product, Defendant claims that the No-Poo Product is "Sulfate Free," that it is used to "gently cleanse," that it is not "harsh" or made with "harsh ingredients," that it gives "your curls what they need and nothing they don't," and that it comes with benefits such as the ability to keep hair from drying out and maintain composure.

37.    However, neither the product packaging nor any other advertising from Defendant warns users that the Products cause scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any related injury during normal use. For example, nowhere on the labeling of the No-Poo Product does it mention scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any related injury during normal use:

---

[25] *Compare* https://www.sephora.com/product/no-poo-P378324?skuId=1784578&om_mmc=ppc-GG_1918213323_70847768576_pla-419288853760_1784578_353573794076_9021734_c&country_switch=us&lang=en&gclsrc=aw.ds&ds_rl=1261471&gclid=EAIaIQobChMItJr6jNG_5wIVRtbACh3WQw2KEAYYBCABEgLOjvD_BwE *with* https://www.target.com/p/suave-professionals-2-in-1-shampoo-and-conditioner-32-fl-oz/-/A-75560945



26

26 https://www.amazon.com/gp/product/B0030LF1KA?pf_rd_p=ab873d20-a0ca-439b-ac45-
cd78f07a84d8&pf_rd_r=7JK77ENMJZXVFMJHKQWJ.





38.    Similarly, nowhere on any of the packaging of the other of the Products does it

state that scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any

---

[27] https://www.ulta.com/no-poo-original-zero-lather-conditioning cleanser?productId=xlsImpprod3960027.

[28] https://www.amazon.com/gp/product/B0030LF1KA?pf_rd_p=ab873d20-a0ca-439b-ac45-cd78f07a84d8&pf_rd_r=7JK77ENMJZXVFMJHKQWJ.

related hair injury occurs from normal use of the Products.[29]

39.     Incredibly, on Defendant's website, Defendant claims that shedding of hair is "normal":

> If you have curly hair, chances are you've dealt with hair shedding. **<u>For most of us, it can be concerning when hair falls out on a daily basis, but it's totally</u> <u>normal.</u>** But, what causes hair shedding? How much hair loss it too much? And, how can you prevent it? Today we're here to give you the lowdown on everything you need to know about hair shedding.[30]

40.     Defendant further explains hair loss is more prominent in curly-haired women because "Sadly, shedding is more common with curly-haired gals because we don't wash or brush our hair as often as our straight hair counterparts."[31]

41.     Defendant further attributes shedding to "giving birth, stress, scalp buildup, dandruff, losing weight, certain illnesses, and more."[32]

42.     Defendant states that "If you're losing more than 100 strands of hair per day, you're dealing with excessive shedding, which is also fairly common."[33]

43.     Further, Defendant claims that shedding is not preventable. On its website it states:

> **Can I prevent shedding?**
> In short, not entirely. While you can lessen the amount of hairs that shed, you'll never be able to completely stop shedding. See your hairstylist or dermatologist if you're really concerned.[34]

44.     Defendant further includes a list of recommendations to lessen shedding. None of the recommendations to reduce shedding include ceasing the use of the No-Poo

---

[29] *See* note 1, *supra.*
[30] https://www.devacurl.com/blog/hair-shedding-101/.
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] https://www.devacurl.com/blog/hair-shedding-101/.

Product or any of the Products:

> **How can I lessen the shedding?**
> a. Find the right <u>cleanser and conditioner</u> for your curl type. This ensures that your curls won't dry out or be damaged which can lead to shedding.
> b. Remove build up. Product build up and dandruff can block your roots and lead to shedding, so be sure to <u>clarify</u> and <u>exfoliate</u>.
> c. Make sure to detangle your hair every time you finish washing your hair. Using a pre-poo (like <u>Wash Day Wonder</u>) before cleansing and finger detangling afterwards can make a world of difference.[35]

45.     Above all, far from being the panacea promised by Defendant, the Products cause scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding. The hair loss is not *de minimis*—consumers, who suffer hair loss often lose significant amounts of hair-and the hair loss persists as long as the user uses the Products.

46.     Many consumers who suffered scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding from the Products saw their symptoms stop by discontinuing their use of the Products.

**II.    Plaintiff's Experiences**

47.     Plaintiff Kathleen Biles purchased and used the No-Poo Product, One Condition Original, and Leave-In Decadence over the last four years.

48.     Plaintiff purchased the Products at Balance Salon in Exton, Pennsylvania, and CVS Pharmacy in Frazier, Pennsylvania, as well as online from Defendant's website.

49.     Plaintiff relied on the representations on the packaging, labeling and marketing of the Products when deciding to purchase and use them.

50.     In or around 2018 while using the Products, Plaintiff began noticing the problems alleged herein. For example, after using the Products, Plaintiff began to experience excessive

---

[35] *Id.*

dandruff, intense itching, and such severe thinning that her scalp became clearly visible.

51.     In 2019, Plaintiff Biles sought help from her family physician and a dermatologist. Between August and October 2019, Plaintiff Biles also saw a plastic surgeon who gave her plasma-rich protein ("PRP") injections, which cost approximately $3,000.

52.     After recently learning about the problems associated with use of the Products, Plaintiff Biles discontinued using them and thereafter switched to another brand of hair care products.

53.     Plaintiff is in the same Class as all other consumers who purchased Defendant's Products during the relevant time period. Plaintiff and Class Members purchased worthless products that caused scalp irritation, hair loss, balding, or otherwise failed to perform as they were intended, i.e., promoting healthy hair. Plaintiff and the Class Members were in fact misled by Defendant's omissions and misrepresentations in respect to the Product. Plaintiff and Class Members would have purchased other hair care products if they had not been deceived by the misleading and deceptive marketing and/or labeling of the Product.

54.     Therefore, Plaintiff, on behalf of herself, the Nationwide Class, and the Subclasses, hereby brings this action for violations of various state and federal laws.

### III.    Defendant's Misrepresentations and Omissions are Material to Consumers

55.     Consumers seek out Defendant's Products specifically for the benefits that Defendant claims they provide: namely, to promote healthier hair than other traditional cleansers and conditioners. Consumers purchase the Products due to Defendant's claim they will not dry out hair and will maintain maximum color.

56.     Consumers also pay a premium for the Products over comparable hair products on the market.

57.    Defendant misleads consumers into thinking they purchased a premium product with greater health benefits and even say that excessive shedding is common, normal and non-preventable; however, users have revealed that in fact the Products cause hair loss, scalp irritation, thinning, breakage, balding during normal use. Further, consumers have also shown that changing from using the Products eliminates shedding.

58.    Risk of hair loss, scalp irritation, thinning, breakage, or balding are material risks to consumers.

59.    Failing to include hair loss, scalp irritation, thinning, breakage, balding, on the labeling, product packaging, and by misleading customers by stating that shedding is "normal," "common," and "non-preventable" are material misrepresentations for consumers of the Products at issue here.

60.    Defendant further misleads consumers into thinking they can and should use unlimited amounts of the Products, through statements such as, "When it comes to curls, it's all about condition, condition, condition. So apply, rinse and repeat as often as needed!"[36]

61.    Every consumer who purchased the Products without the true facts about the Products and disclosure of the inherent health risks prior to purchase was injured at the point of sale when, instead of obtaining safe, natural, proven, guaranteed to promote hair growth, strengthening, and conditioning cleanser, consumers obtained Defendant's unreasonably dangerous and defective Products. Consumers have been further injured by way of requiring expensive professional hair treatment and medical treatment as a result of injuries caused by the Products.

---

[36] https://www.devacurl.com/us/products/conditioners/one-condition-original/v/29778541346898.

62.     By marketing, selling and distributing the Products to purchasers throughout the United States, Defendant made actionable statements that the Products were free of defects and safe and fit for their ordinary intended use and purpose.

63.     By marketing, advertising, selling and distributing the Products to purchasers throughout the United States, Defendant made actionable statements that the ordinary use of the Products would not involve undisclosed safety risks. Further, Defendant concealed what they knew or should have known about the safety risks resulting from the material defects in the Products.

64.     Defendant engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading and likely to mislead reasonable consumers. Alternatively, Defendant was reckless in not knowing that these representations were false and misleading at the time they were made. Defendant had and has exclusive access to data pertaining to the Products' defect that Plaintiff and members of the proposed Classes could not and did not have.

### IV.    Additional Common Facts

65.     Plaintiff's experiences are by no means isolated or outlying occurrences. Indeed, the internet is littered with stories of from other Class Members complaining of the same issues with the Products as Plaintiff has alleged herein.

66.     As reported by ABC News, stylist and author Stephanie Mero, who goes by the handle "thecurlninja" on social media, had been a longtime proponent of DevaCurl's Products, using them to maximize her customers' natural curls in her salon and encouraging her thousands

of followers online to use them to help bring out their own curls.[37]

67.     According to the report, Ms. Mero says that changed when she started to see damage in her own hair. She eventually stopped using the Products and recommended that her clients do the same. Before and after photos show the damage Defendant's Products caused to Ms. Mero's hair:

**Before:**



---

[37] Darla Miles, *Customers say DevaCurl product line made their hair fall out*, ABC7 NEWS, Feb. 6, 2020, *available at* https://abc7ny.com/health/customers-say-curly-styling-products-made-their-hair-fall-%20out/5906690/ (last visited Mar. 9, 2020).

**After:**



68.    As further reported, Ms. Mero went on to create a Facebook group for others who believe DevaCurl is behind their hair damage. Currently, there are more than **57,000 members**.[38]

69.    According to the report, Ms. Mero says she will continue speaking out about the issue until DevaCurl issues a recall and the FDA takes the issue more seriously.[39]

70.    According to reports, Ms. Mero is not alone. Ayesha Malik, another famous Youtuber with more than 200,000 subscribers, posted her own video where she speaks about her experience with Defendant's products.[40]

71.    According to reports, Ms. Malik tells viewers to immediately stop using the Products and apologizes for recommending them: "For the first time in my life I experienced

---

[38] "Hair Damage & Hair Loss from DevaCurl – You're not CRAZY or ALONE!" *available at* https://www.facebook.com/groups/486634018576633/ (last visited Mar. 9, 2020).
[39] *Florida hairstylist among customers claiming DevaCurl products caused serious damage*, ABC ACTION NEWS, Feb. 6, 2020, *available at* https://www.abcactionnews.com/news/national/florida-hairstylist-among-customers-claiming-devacurl-products-caused-serious-damage (last visited Mar. 9, 2020).
[40] *See* https://www.youtube.com/watch?v=nuo8UCcyDhg ("Why I Stopped Using DevaCurl").

dandruff," Ms. Malik said. "My scalp was on fire on some days, I didn't know what it was."[41]

72.    Similarly, a thread on Sephora.com originally posted in 2016 is now flooded with comments from customers complaining about the products and looking for answers.[42]

73.    Additional online complaints dating back several years, are documented below:

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on December, 4, 2019: "I had long hair to my belly button and after switching everything to deva curl I was in denial of my hair loss until my hairdresser pointed out how my hair was shedding super bad and how it was thinking out. It's been a couple months now and my hair is getting back to normal. Devacurl didn't work for me and now I'm dealing with the issues it caused. I would just cry because my hair was falling out in big clumps!! Now I just use Olaplex for most my hair needs. Olaplex #3 has been helping with the bonding of my hair. I feel so sad you had to go through this as well."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on November, 4, 2019: "The same thing happened to me a couple of years ago. I went to a Deva salon in Nashville, TN. After my appointment I purchased the product line that was used. From my 1st time using it at home my hair began shedding in large clumps. I tried it one more wash day and the same thing happened. Once I stopped using the products the clumps of hair ceased from falling out. I informed my stylist at the salon and she told one of the Level 3 stylists who has done my hair there before too. Both said they had never heard of what I had experienced. Of course I'm thinking if the large clumps of hair that came out were that noticeable to me that they had to have seen it when they did my hair."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on November, 7, 2019: "This is crazy reading these posts! I went "no poo" over 10 years ago and hit the curly girl method HARD! Used all DC products and my hair was ridiculously gorgeous. I'm a redhead and typically shed a lot so I didn't really think too much about it but I remember thinking damn this is a lot! My stylist at the time commented on increased shedding but just assumed it was normal. She started getting out an extra towel to wipe the hair off her hands after washing my hair!! Gradually my hair started feeling dry and brittle, especially after ArcAngel and whatever the deep conditioner is. I started using new products and once I got rid of all DC products my hair was soft and happy again. Lesson learned!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on November, 6, 2019: "Hi - so glad I found your post and many others about how

---

[41] *Florida hairstylist among customers claiming DevaCurl products caused serious damage*, ABC ACTION NEWS, Feb. 6, 2020, *available at* https://www.abcactionnews.com/news/national/florida-hairstylist-among-customers-claiming-devacurl-products-caused-serious-damage (last visited Mar. 9, 2020).
[42] https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/m-p/2411473.

Deva Curl products ruined my hair !! First it looked good but within 4 months of use my hair became dry , brittle , broom like and was falling out !! I thought something was wrong with my health and started taking hair & skin vitamins and complained to the hair dresser who recommended deva curl to me. She had no idea it was the product that is absolutely horrible!! I spent over $100 on all the products and am now very upset trying to repair my hair! If anyone has a shampoo they recommend let me know. For now I'm going back to using Quidad and praying my hair grows back thick again & my curls come back. Good luck to you & everyone out there who experienced what I did - I wish we could all sue them!!!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on September, 12, 2019: "I am mind-blown at this thread. I was alwaysss the kid with hair so thick that hair stylists said something about it every time I had my hair cut. A year ago I noticed hair loss starting. And a year ago I started Deva Curl styling products. I don't use their hair washing products. In June, I got my first Deva cut and she told me I have thin hair, and that was crazy to hear. It's now to the point that I have super thin areas on each side of my forehead, which made me go to the doctor. I had my hormones checked and all kinds of other blood work done, and it's all normal. I put the thoughts together and realized the hair loss started the same time I started Deva products. Then I found this thread. I am switching ASAP. Please, if anyone knows of cruelty-free products that give poofy, frizzy, curly hair definition and frizz control, help a girl out!! and Deva Curl... thanks for that medical bill!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on August, 12, 2019: "Hi, just wanted to let you know you are not alone! Other men and woman have had the same results from using Deva Curl products in this last years specially in 2019 which the major complaints are excessive hair loss, very dry and broken hairs and irritation. Like most people that call Deva Curl and complained they always get an answer that puts the blame on us and never the products. We have started a support group page on Facebook called "Hair and Scalp Issues from Deva Curl Products - You are not Alone! We hope that you will join us and share your story so we can help many men and women around the world to help them figure out that they are not crazy, that is not their hormones or their old age and that there is a chance that it was their products they belived in that did this to them!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on October, 17, 2019: "The same thing happened to me. Hair loss in Clumps, scalp irritation, and very noticeable loss in volume. I can see my scalp now. I feel like crying knowing that I have an entire box of products to throw away that cost me $100's. I'm terrified now of this happening with other "reputable" distributors. I can't believe this. It has really hit my self-esteem hard and my faith in curl brands.

- https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products on May 2016 "Hey, I really appreciate your post about the problems you are having with hair loss. I am new to the NaturallyCurly world and I am still working on being acclimated. Anyway, I too am having a similar problem. I was using a really nice

shampoo and conditioner that had Keratin in it and I was loving it. Several months back, I saw a commercial for Wen and thought I would give it a try. After about a month of using it, my hair started to fall out. I switched back to a lathering shampoo until about five months ago. I went and tried a Deva Cut for the first time and bought all of the products. As I am sure most would agree, I fell in love with the stuff. My hair felt and looked great. Now, the ball of hair in my shower nearly doubles in size from one day to the next. I am not sure if it isn't clearing my scalp properly or it is causing more build up that usual but all I know is it has me concerned.

I also had some itching when I first started using the products. That had me concerned but it went away after I started to use the products regularly. I have been a Ouidad girl from about 20 years, give or take, and I just started to try new things. After this experience, I am not sure what to do. I am taking a break from Deva Curl for a little while and I will go back to my out routine and see if I notice a difference. I really think that is the only way to tell.

I'm not sure what it is worth but I was using shampoo and conditioner by OGX called Brazilian Keratin Therapy. It was designed for women who get Brazilian Keratin Treatments, something I fell victim too as well. At any rate, it works beautifully in conjunction with my Ouidad products. I'm also not sure if my hair type has anything to do with all of this. My curls are tight and spirally. a pencil fits inside them perfectly. My hair is very fine but I have a lot of  it!"

74.     Because of the pervasive complaints in respect to the Products, Defendant has knowledge of the alleged defects. Indeed, in January, Defendant issued a public statement acknowledging the alleged defects but has refused to take responsibility for the problem.[43]

75.     In the FAQ section of the recently-launched "Facts About Devacurl" website, Defendant flatly stated it would not recall the Products:

Are you considering a recall?

No. Based on all the evidence we have—which includes independent testing of our products—we stand by the quality and safety of our products.[44]

## **CLASS ACTION ALLEGATIONS**

76.     Plaintiff brings this action individually and as a representative of all those similarly

---

[43] *Florida hairstylist among customers claiming DevaCurl products caused serious damage*, ABC ACTION NEWS, Feb. 6, 2020, *available at* https://www.abcactionnews.com/news/national/florida-hairstylist-among-customers-claiming-devacurl-products-caused-serious-damage (last visited Mar. 9, 2020).
[44] https://www.factsaboutdevacurl.com/us/frequently-asked-questions.

situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Class:

> **<u>Nationwide Class:</u> All persons in the United States who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

77.    Plaintiff Biles also brings this action on behalf of herself and the members of the following Pennsylvania Subclass:

> **<u>Pennsylvania Subclass:</u> All persons in Pennsylvania who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

78.    Specifically excluded from these definitions are (1) any and all persons who only purchased the Products directly from Defendant; (2) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (3) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (4) Class Counsel.

79.    As used herein, "Class Members" shall mean and refer to the members of the Nationwide Class and all Subclasses, including Plaintiff.

80.    Plaintiff seeks only damages and equitable relief on behalf of herself and the Class Members. Plaintiff disclaims any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiff and/or the Class Members.

81.    <u>Numerosity</u>: Although the exact number of Class Members is uncertain at this time and can only be ascertained through discovery, the number is great enough such that joinder is impracticable and likely in excess of 150,000. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

82.    <u>Typicality</u>: The claims of the representative Plaintiff are typical in that Plaintiff,

like all Class Members, purchased the Products that were manufactured and distributed by Defendant. Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that, *inter alia*, they have incurred or will continue to incur damage as a result of overpaying for a product that did not perform as advertised. Furthermore, the factual basis of Defendant's misconduct is common to all Class Members because Defendant has engaged in a systematic fraudulent behavior that was deliberate, includes negligent misconduct, and results in the same injury to all Class Members.

83.    <u>Commonality</u>: Plaintiff's claims involve numerous questions of law and fact common to herself and Class Members that predominate over any individualized questions. These common legal and factual issues include:

a. Whether the Products are defective such that they cause hair loss, scalp irritation or balding;

b. Whether and when Defendant had exclusive knowledge that the Products are defective but failed to disclose the defect to the public;

c. Whether the Products provide the benefits claimed by Defendant on the labeling, packaging, and/or in the course of its marketing;

d. Whether Defendants' conduct violated the applicable state consumer fraud claims alleged herein;

e. Whether Defendant's conduct constituted a breach of applicable warranties;

f. Whether Defendant's acts and omissions make it liable to Plaintiff and Class Members for negligence and strict products liability;

g. Whether Defendant engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by objectively misleading Plaintiff and putative Class and Subclass members;

h. Whether Defendant's conduct, as alleged herein, was likely to mislead a reasonable consumer;

i. Whether Defendant's statements, concealments and omissions regarding the Products were material, in that a reasonable consumer could consider them important in purchasing the Products;

j. Whether, as a result of Defendant's omissions and/or misrepresentations of

material facts, Plaintiff and members of the Class and Subclass have suffered an ascertainable loss of monies and/or property and/or value;  and

k.  Whether Plaintiff and Class members are entitled to monetary damages, injunctive relief, and/or other remedies and, if so, the nature of any such relief.

84.  <u>Adequate Representation</u>: Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

85.  <u>Predominance and Superiority:</u> Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

86.  Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class appropriate.

**COUNT I**
**VIOLATION OF MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301, *et seq.***

**(On Behalf of The Nationwide Class)**

87.    Plaintiff brings this count on behalf of herself and the Nationwide Class and repeats and re-alleges all previous paragraphs, as if fully included herein.

88.    The Products are consumer products as defined in 15 U.S.C. § 2301(1).

89.    Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3), and are persons entitled under the applicable state laws to enforce against the warrantor the obligations of its express and implied warranties.

90.    Plaintiff purchased Products costing more than $5 and her individual claims are greater than $25 as required by 15 U.S.C. §§ 2302(e) and 2310(d)(3)(A).

91.    Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

92.    The Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1), provides a cause of action for any consumer, who is damaged by the failure of a warrantor to comply with a written or implied warranty.

93.    Defendant made promises and representations in an express warranty provided to all consumers, which became the basis of the bargain between Plaintiff, Class and Subclass members, and Defendant.

94.    Defendant's written affirmations of fact, promises and/or descriptions as alleged—including promises that the Products promote healthy hair, are "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicons to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients

from around the world," and that they give "your curls what they need and nothing they don't,"[45]––are each a "written warranty." The affirmations of fact, promises, and/or descriptions constitute a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(6).

95.    Defendant also advertises, markets, and promotes its Products, including but not limited to on its website, as coming with a "satisfaction guarantee," which states that if a consumer/purchaser is not "completely satisfied with a DevaCurl product that you purchased from us or one of our authorized resellers" "for any reason," Defendant will allow for a return and provide a full refund of the purchase price.[46] The complete satisfaction guarantee constitutes a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(6).

96.    Further, Defendant provided Plaintiff and the other Nationwide Class members with an implied warranty of merchantability in connection with the purchase of the Products that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

97.    As a part of the implied warranty of merchantability, Defendant warranted to Plaintiff and Class members that the Products were of merchantable quality (i.e., a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were  intended.

98.    Defendant breached all applicable warranties, as described in more detail above, and is therefore liable to Plaintiff and the Nationwide Class pursuant to 15 U.S.C. § 2310(d)(1).

---

[45] https://www.devacurl.com/us/curl-101/product-philosophy https://www.devacurl.com/us/curl- 101/product-philosophy/ingredient-glossary.
[46] https://www.devacurl.com/us/faq#shipping.

Without limitation, the Products suffer from latent and/or inherent defects that cause substantial hair loss, hair breakage, and scalp irritation, rendering the Products unfit for their intended use and purpose. This defect substantially impairs the use, value, and safety of the Products.

99.    Any effort to limit the implied warranties in a manner that would exclude coverage of the Products is unconscionable, and any such effort to disclaim, or otherwise limit, for the defective Products is null and void. Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendant, on the one hand, and Plaintiff and the other Nationwide Class members, on the other. Moreover, any limitations on the warranties are substantively unconscionable. Following early reports of injuries caused by the Products, including multiple complaints to the FDA beginning in February 2018, Defendant knew that the Products were defective and would continue to pose safety risks. Defendant failed to disclose the product defect to Plaintiff and the Nationwide Class members. Thus, Defendants enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

100.    Plaintiff and each of the other Nationwide Class members have had sufficient direct dealings with Defendant to establish privity of contract.

101.    Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and its third-party retailers, and specifically of the implied warranties. Third-party retailers such as CVS Pharmacy, independent salons, Ulta Beauty, Sephora, and Amazon were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements provided with the Products; the warranty agreements were designed for and intended to benefit consumers.

102.    All conditions precedent to seeking liability under this claim for breach of express and implied warranty have been performed by or on behalf of Plaintiff and others in terms of

paying for the goods at issue.

103.     Pursuant to 15 U.S.C. § 2310(e), Plaintiff and the Nationwide Class are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff and the Nationwide Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

104.     Furthermore, affording Defendant an opportunity to cure its breach of written warranties would be unnecessary and futile here. Defendant was placed on reasonable notice of the defect in the Products and breach of the warranties based on numerous complaints received directly and indirectly from Plaintiff and the Nationwide Class, including without limitation multiple complaints to the FDA beginning in February 2018, and have had ample opportunity to cure the defect for Plaintiff and the Nationwide Class, but have failed to do so, instead denying the claims and putting out public statements denying that there are any issues with the Products. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff and the Nationwide Class resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure the breach of warranty is excused and thereby deemed satisfied.

105.     Defendant's breaches of warranty have caused Plaintiff and the other Nationwide Class members to suffer injuries, paying for defective Products, and entering into transactions they would not have entered into at all, or not for the consideration paid. As a direct and proximate result of Defendant's breaches of warranty, Plaintiff and the Nationwide Class have suffered damages and continue to suffer damages, including economic damages in terms of the cost of the Products and the cost of efforts to mitigate the damages caused by same.

106.     Pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the other Nationwide Class

members are also entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and the other Nationwide Class members in connection with the commencement and prosecution of this action.

## COUNT II
## BREACH OF EXPRESS WARRANTY

### (On Behalf of The Nationwide Class)

107.    Plaintiff brings this count on behalf of herself and the Nationwide Class and repeats and re-alleges all previous paragraphs, as if fully included herein.

108.    Defendant sold and Plaintiff purchased the Products from authorized resellers of Defendant's products.

109.    Defendant represented in its marketing, advertising, and promotion of the Products that the Products promote healthy hair, and are "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicons to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world" and that they give "your curls what they need and nothing they don't."[47]

110.    Defendant also advertises, markets, and promotes its Products, including but not limited to on its website, as coming with a "satisfaction guarantee," which states that if a consumer/purchaser is not "completely satisfied with a DevaCurl product that you purchased from us or one of our authorized resellers" "for any reason," Defendant will allow for a return and provide a full refund of the purchase price.[48]

---

[47] https://www.devacurl.com/us/curl-101/product-philosophy.
[48] https://www.devacurl.com/us/faq#shipping.

111.    Defendant made these representations to specifically induce Plaintiff and Class Members to purchase the Products.

112.    Defendant's representations that the Products constituted part of the basis of the bargain between Defendant and Plaintiff (and Class Members).

113.    Each of these representations and the complete satisfaction guarantee constitutes an express written warranty.

114.    Defendant breached its express warranties because the Products suffer from a latent and/or inherent defect that causes them to produce substantial hair loss and scalp irritation, rendering the unfit for their intended use and purpose. This defect substantially impairs the use, value and safety of the Products.

115.    The latent and/or inherent defect at issue herein existed when the Products left Defendant's possession or control and was sold to Plaintiff and Class members. The defect was undiscoverable by Plaintiff and the Class members at the time of purchase of the Products.

116.    While Defendant expressly disavows all warranties or representations, this disavowal is limited by its own plain language to "any products or services ordered or provided via the [Defendant's] website.[49] Plaintiff and Class members purchased products from third party retailers such as CVS Pharmacy, Ulta Beauty, Sephora, Amazon, independent salons, and others. Furthermore, consumers who purchased the Products solely from Defendant's website are expressly excluded from the putative Class and Subclass.

117.    Plaintiff and the Nationwide Class are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court

---

[49] https://www.devacurl.com/us/terms-conditions.

determines the representative capacity of Plaintiff and the Nationwide Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

118.    Furthermore, affording Defendant an opportunity to cure its breach of written warranties would be unnecessary and futile here. Defendant was placed on reasonable notice of the defect in the Products and breach of the warranties based on numerous complaints received directly and indirectly from Plaintiff and the Nationwide Class, including without limitation multiple complaints to the FDA beginning in February 2018, and have had ample opportunity to cure the defect for Plaintiff and the Nationwide Class, but have failed to do so, instead denying the claims and putting out public statements denying that there are any issues with the Products.[50] Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff and the Nationwide Class resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure the breach of warranty is excused and thereby deemed satisfied.

119.    As a direct and proximate result of Defendant's breaches of these express warranties, Plaintiff and Class Members have been damaged because they did not receive the products as specifically warranted by Defendant. Plaintiff also paid a premium for Defendant's Products that did not conform to Defendant's express warranties.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (On Behalf of The Nationwide Class)

120.    Plaintiff brings this count on behalf of herself and the Nationwide Class and repeats and re-alleges all previous paragraphs, as if fully included herein.

---

[50] https://www.devacurl.com/us/deva-community-statement.

121.    UCC § 2-314 states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." UCC § 2-314 has been adopted in Pennsylvania (13 PA. C.S.A. § 2314) and other states.

122.    As set forth above, Plaintiff has standing to pursue this claim as she has suffered injury in fact and has lost money or property as a result of Defendant's actions.

123.    Defendant is a "merchant" within the meaning of UCC § 2-314 because it deals in the sale of the Products and holds itself out as "having knowledge or skill peculiar to" haircare products such as the Products at issue.

124.    Defendant sold and Plaintiff purchased the Products from authorized resellers of Defendant's products.

125.    By placing such products into the stream of commerce, and by operation of law, Defendant impliedly warranted to Plaintiff and Class members that the Products were of merchantable quality (*i.e.*, a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

126.    Defendant breached the implied warranty of merchantability because the Products suffer from a latent and/or inherent defect that causes them to produce substantial hair loss and scalp irritation, rendering the unfit for their intended use and purpose. This defect substantially impairs the use, value and safety of the Products.

127.    The latent and/or inherent defect at issue herein existed when the Products left Defendant's possession or control and was sold to Plaintiff and Class members. The defect was

undiscoverable by Plaintiff and the Class members at the time of purchase of the Products.

128.    Defendant has misled consumers into believing the Products were "Sulfate Free," that they are used to "gently cleanse," that they are not "harsh" or made with "harsh ingredients," and that hair loss and shedding (even excessive shedding) was "common," "normal," and "not preventable." Defendant took advantage of Plaintiff's and the Class members' trust and confidence in its brand, and deceptively sold the Products, knowing that they caused hair loss, shedding, and scalp irritation.

129.    Defendant's intended beneficiaries of these implied warranties were ultimately Plaintiff and the Class members, not distributors who sold the Products. Moreover, Defendant exercises substantial control over which outlets can carry and sell the Products, which are the same places that Plaintiff purchased them. In addition, Defendant's warranties are in no way designed to apply to the distributors that purchase the Products in bulk and then sell them on an individual basis to each consumer. Individual consumers are the ones who ultimately review the labels, which Defendant knows, prior to making any purchasing decisions. As a result, these warranties are specifically designed to benefit the individual consumer who purchases the Products.

130.    Plaintiff and Class Members sustained damages as a direct and proximate result of Defendant's breaches in that they paid a premium for the Products that they would not have otherwise paid. Plaintiff and the Classes also did not receive the value of the Product they paid for—the Products are worthless or worth far less than Defendant represents due to the latent and/or inherent defect that causes hair damage, hair loss and/or scalp irritation.

131.    Plaintiff and the Classes have sustained, are sustaining, and will sustain damages if Defendant continues to engage in such deceptive, unfair, and unreasonable practices.

132.    As a result of the breach of the implied warranty of merchantability, Plaintiff and Class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT IV
## UNJUST ENRICHMENT

**(On Behalf of The Nationwide Class, and in the Alternative to Counts I-III)**

133.    Plaintiff brings this count on behalf of herself and the Nationwide Class and repeats and re-alleges all previous paragraphs, as if fully included herein.

134.    Plaintiff conferred benefits on Defendant by purchasing the Products at a premium price.

135.    Defendant has knowledge of such benefits.

136.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Products, because the Defendant has obtained the benefits conferred by Plaintiff and the Class Members. By providing the No-Poo Products without those products having the characteristics and benefits promised, Defendant failed to adequately compensate Plaintiff and Class Members for the benefits conferred.

137.    Retention of those moneys under these circumstances is unjust and inequitable because (a) Defendant falsely and misleadingly represented that the Products promoted healthy hair, were "Sulfate Free," that they are used to "gently cleanse," that they are not "harsh" or made with "harsh ingredients," and that hair loss and shedding (even excessive shedding) was "common," "normal," and "not preventable." (b) Plaintiff and Class Members paid a price premium for the Products based on Defendant's false and misleading statements; and (c) the

Products did not have the characteristics and benefits promised because of the latent and/or inherent defect that causes hair loss and scalp irritation.

138.    This has resulted in injuries to Plaintiff and members of the Class because they would not have purchased (or paid a price premium) for the Products had they known of the latent and/or inherent defect that causes hair damage, hair loss and/or scalp irritation in Defendant's Products.

139.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Class is unjust and inequitable, and because equity and good conscience requires restitution, Defendant must pay restitution to Plaintiff and members of the Class for its unjust enrichment, as ordered by the Court.

**COUNT V**
**NEGLIGENCE – FAILURE TO WARN**

**(On Behalf of The Nationwide Class)**

140.    Plaintiff brings this count on behalf of herself and the Nationwide Class and repeats and re-alleges all previous paragraphs, as if fully included herein.

141.    At all times referenced herein, Defendant was responsible for designing, formulating, testing, manufacturing, inspecting, distributing, marketing, supplying and/or selling the Products to Plaintiff and the Class.

142.    At all times material hereto, the use of the Products in a manner that was intended and/or reasonably foreseeable by Defendant involved substantial risk of hair loss and scalp irritation.

143.    At all times the risk of substantial hair loss and scalp irritation was known or knowable by Defendant, in light of the generally recognized and prevailing knowledge available

at the time of manufacture and design, as described herein.

144.    Defendant, as the developer, manufacturer, distributor and/or seller of the Products, had a duty to warn Plaintiff and the Class of all dangers associated with the intended use.

145.    After receiving multiple complaints of hair loss and scalp irritation, including multiple adverse event reports to the FDA, and after dozens (if not hundreds) of online postings reporting hair loss and scalp irritation after using the Products, a duty arose to provide a warning to consumers that use of the Products could result in hair loss or scalp irritation.

146.    Defendant was negligent and breached its duty of care by negligently failing to give adequate warnings to purchasers and users of the Products, including Plaintiff and the Class, about the risks, potential dangers and defective condition of the Products.

147.    Defendant was negligent and breached its duty of care by negligently blaming other risk factors for hair loss, by telling consumers that hair loss and shedding was "common," "normal," and "not preventable," thereby concealing and failing to warn purchasers and users of the Products, including Plaintiff and the Class, about the risks, potential dangers and defective condition of the Products.

148.    Defendant knew, or by the exercise of reasonable care, should have known of the inherent design defects and resulting dangers associated with using the Products as described herein, and knew that Plaintiff and Class members could not reasonably be aware of those risks. Defendant failed to exercise reasonable care in providing the Class with adequate warnings.

149.    As a direct and proximate result of Defendant's failure to adequately warn consumers that use of the Products could cause injuries such as hair loss, balding and/or scalp irritation, Plaintiff and the Class have suffered damages as set forth herein.

<u>COUNT VI</u>
<u>VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND
CONSUMER PROTECTION LAW,
73 PA. C.S.A. §§ 201-1 *et seq.*</u>

**(On behalf of the Pennsylvania Subclass)**

150.    Plaintiff brings this count on behalf of herself and the Pennsylvania Subclass and repeats and re-alleges all previous paragraphs, as if fully included herein.

151.    The Pennsylvania Unfair Trade Practices Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce …." 73 PA. C.S.A. § 201-3.

152.    Plaintiff violated 73 PA. C.S.A. § 201-3's prohibition against engaging in unlawful acts and practices by: representing that the Products have characteristics, uses, or benefits that they do not have (73 PA. C.S.A. § 201-2(4)(v)); failing to comply with the terms of any written guarantee or warranty given to the buyer (73 PA. C.S.A. § 201-2(4)(xiv)); and engaging in fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding about the Products (73 PA. C.S.A. § 201-2(4)(xxi)).

153.    As alleged herein, Defendant continues to misrepresent the Products' abilities and continues to deny that the Products pose health and safety risks, Defendant has not recalled its Products nor provided any remedial efforts including a warning disclosing their possible risks, and Defendant's conduct is ongoing and continues to this date.

154.    Defendant's conduct is substantially injurious to consumers, offends public policy, is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefit. Specifically, the health and safety risks were outweighed by Defendant's profit motive. Defendant engaged in this conduct at the expense of its customers' rights when other,

lawful alternatives were available (such as providing customers with full information about Defendant's Products, including the known risks and potential side effects of use, prior to purchase).

155.    Defendant engaged in this conduct to gain an unfair commercial advantage over its competitors, seeking to avoid public knowledge of the abilities of Defendant's Products and their defects to avoid damage to their sales or reputation. Defendant withheld critical and material information from Plaintiff and Pennsylvania Subclass Members, competitors, and the marketplace, all to Defendant's unfair competitive advantage.

156.    Defendant's business practices, as alleged herein, constitute fraudulent conduct because they were likely to deceive, and did deceive, Pennsylvania Subclass Members into purchasing Defendant's Products when those Products were misrepresented and defective with health and safety risks and otherwise did not perform as advertised.

157.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

158.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff and Pennsylvania Subclass Members were injured and lost money or property, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in dealing with treating damages from the use of Defendant's Products.

159.    Defendant recklessly disregarded Plaintiff and Pennsylvania Subclass members' rights. Defendant's knowledge of the Defendant's Products' false claims and health and safety risks put it on notice that the Defendant's Products were not as it advertised.

160.    Plaintiff reserves the right to allege other violations of the law, which constitute

other unlawful business acts and practices.

161.   Pursuant to 73 PA. C.S.A. § 201-9.2(a), Plaintiff and the Pennsylvania Subclass Members seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding actual, statutory, and treble damages and any other just and proper relief available under the Pennsylvania Unfair Trade Practices Act.

## **RELIEF DEMANDED**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant, as follows:

   a.  For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel;

   b.  For an order declaring that Defendant's conduct violates the statutes referenced herein;

   c.  For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

   d.  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

   e.  For prejudgment interest on all amounts awarded;

   f.  For an order of restitution and all other forms of equitable monetary relief;

   g.  For injunctive relief as pled or as the Court may deem proper; and

   h.  For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated:  May 6, 2020                              Respectfully submitted,

                                                 */s/ Jeffrey J. Corrigan*
                                                 Bar I.D. No. 2372654
                                                 Eugene A. Spector
                                                 Jeffrey J. Corrigan
                                                 John A. Macoretta
                                                 Jeffrey L. Spector
                                                 Diana J. Zinser
                                                 **SPECTOR ROSEMAN & KODROFF, P.C.**
                                                 2001 Market Street, Suite 3420
                                                 Philadelphia, PA, 19103
                                                 Phone: (215) 496-0300
                                                 espector@srkattorneys.com
                                                 jcorrigan@srkattorneys.com
                                                 jmacoretta@srkattorneys.com
                                                 jspector@srkattorneys.com
                                                 dzinser@srkattorneys.com

                                                 Steven A. Kanner
                                                 Douglas A. Millen
                                                 **FREED KANNER LONDON & MILLEN LLC**
                                                 2201 Waukegan Road, Suite 130
                                                 Bannockburn, IL 60015
                                                 Phone: (224) 632-4500
                                                 skanner@fklmlaw.com
                                                 dmillen@fklmlaw.com

                                                 Jonathan M. Jagher
                                                 Kimberly A. Justice
                                                 **FREED KANNER LONDON & MILLEN LLC**
                                                 923 Fayette Street
                                                 Conshohocken, PA 19428
                                                 Phone: (610) 234-6487
                                                 jjagher@fklmlaw.com
                                                 kjustice@fklmlaw.com

                                                 Philip A. Steinberg
                                                 124 Rockland Avenue
                                                 Bala Cynwyd, PA 19004
                                                 Phone: (610) 664-0972
                                                 pasteinbe@aol.com

                                                 *Counsel for Plaintiff and the Proposed Class*